# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) |
| Plaintiff, | ) CASE NO. 2:23-cv-201 ) |
| v. | ) **COMPLAINT** ) ) Jury Trial Demanded |
| MUNSTER MEDICAL RESEARCH FOUNDATION, INC., d/b/a COMMUNITY HOSPITAL, | ) ) ) ) |
| Defendant. | ) ) |

## NATURE OF THE CASE

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Christina Carter. As discussed in greater detail in Paragraphs 16 and 17, below, Defendant violated the ADA when it refused to provide the reasonable accommodation of transfer to a vacant position for which Carter was qualified and instead terminated her employment, because of her disability, after a workplace injury left her with limitations on her ability to lift and carry.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to

Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Indiana, South Bend Division.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant Munster Medical Research Foundation, Inc., is an Indiana corporation doing business as Community Hospital (hereinafter "Community Hospital"). At all relevant times, Community Hospital has been doing business in the State of Indiana and the City of Munster and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Carter filed a charge with the Commission alleging violations of the ADA by Defendant.

8. On July 14, 2022, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On August 16, 2022, the Commission issued to Defendant an amended Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. From July to September 2022, the Commission engaged in communications with Defendant to provide the opportunity to remedy the discriminatory policies and practices described in the Amended Letter of Determination.

11. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On September 20, 2022, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14. Community Hospital is a medical facility within the Community Healthcare System, which is the registered trademark for a network of medical facilities owned and operated by Community Hospital's parent company, Community Foundation of Northwest Indiana, Inc.

15. The medical facilities within the Community Healthcare System share human resources personnel, policies, and procedures, including, but not limited to, policies and procedures related to medical leaves of absence, transfers, and reasonable accommodation.

16. During the relevant time, Carter was a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

17. On or about May 2, 2019, Defendant engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a) and (b)(5), by failing to provide Carter with a reasonable accommodation and terminating her employment because of her disability. Specifically:

   a. Prior to and including October 2018, Carter was employed by Community Hospital as a Registered Nurse in its post-anesthesia care unit ("PACU").

b. In or around October 2018, Carter suffered injuries when she fell at work. The injuries caused impairments including left shoulder impingement and biceps tenosynovitis.

c. Due to the injuries, Carter took a leave of absence to undergo treatment and recovery.

d. On or around January 9, 2019, Carter's doctor released her to return to work with restrictions of no lifting over 5 pounds, no repetitive pushing or pulling, no repetitive grasping, and no use above the shoulder. Carter's doctor stated that if no job was available with modified duties meeting these restrictions, Carter was to remain off work.

e. In or around January 2019, Defendant informed Carter that she could not return to her PACU position with her restrictions and that there were no jobs available that met her restrictions. As a result, Carter remained off work.

f. At some time between January and April 2019, Defendant filled Carter's former PACU position with an individual who did not have lifting restrictions.

g. On or about April 2, 2019, Carter's doctor released her to return to work with "permanent" restrictions and limited her to occasional lifting, pushing, and pulling up to 29 pounds with her back/lower extremities, occasional two-hand lifting up to 15 pounds from floor to waist, occasional waist to shoulder lifting no greater than 10 pounds, and occasional lifting overhead no greater than 6

pounds. Carter's doctor also stated she had restrictions per the "FCE," a functional capacity evaluation completed in March 2019.

h. In addition to the functional capacity described in Paragraph 17(g), the March 2019 FCE report stated that Carter could occasionally lift up to 20 pounds, or frequently lift up to 17.5 pounds, from 12 inches off the ground to waist height and could occasionally carry up to 20 pounds for 25 feet.

i. Defendant knew Carter had injuries to her left arm and shoulder that caused her to take medical leave for treatment and that caused her to have lifting restrictions upon her two releases to return to work.

j. Upon Carter's release to return to work on or around April 2, 2019, Defendant informed Carter that she could not return to a PACU position and was not qualified for any bedside nursing position due to her lifting restrictions.

k. Upon Carter's release to return to work on or around April 2, 2019, Defendant informed Carter that she was required to apply for vacant positions for which she was qualified and that she would be terminated if she did not secure a new position by May 2, 2019.

l. Defendant Community Hospital also informed Carter that if she secured a new position between May 2, 2019, and June 2, 2019, she would be considered a bridged hire, which would allow her to be reinstated without being subject to the rules of a new employee.

 m. Defendant informed Carter that she could apply for a vacant position anywhere in the Community Healthcare System.

 n. Between April 2, 2019, and May 2, 2019, Carter applied for vacant positions for which she was qualified and which she could perform with her lifting restrictions, either with or without reasonable accommodations, including, but not limited to, two Clinical Case Manager openings, two Registered Nurse Immediate Care Clinic openings, and one opening for a Registered Nurse in Endoscopy.

 o. Between May 2, 2019, and June 2, 2019, Carter applied for vacant positions for which she was qualified and which she could perform with her lifting restrictions, either with or without reasonable accommodations, including, but not limited to, Registered Nurse in Surgery.

 p. Defendant interviewed Carter for one of the Clinical Case Manager openings but not for the other Clinical Case Manager opening.

 q. Defendant did not interview Carter for any other vacant position.

 r. Defendant required Carter to compete with other applicants for vacant positions.

 s. Defendant did not inform Carter of vacant positions for which Carter was qualified.

 t. Defendant did not engage in the interactive process with Carter to identify reasonable accommodations that would enable her to perform the essential

functions of vacant positions, including registered nurse or bedside nursing positions.

u. Defendant did not provide reasonable accommodations that would have enabled Carter to perform registered nurse or bedside nursing positions with her disability.

v. Defendant did not transfer or reassign Carter to a vacant position.

w. On or about May 2, 2019, Defendant terminated Carter because of her disability.

x. At and around the time of her termination, positions were vacant or available at Community Hospital for which Carter was qualified and into which Carter could have been reassigned.

y. At and around the time of her termination, positions were vacant or available in the Community Healthcare System for which Carter was qualified and into which Carter could have been reassigned.

z. At and around the time of her termination, reasonable accommodations were available that would have permitted Carter to perform the essential functions of one or more vacant positions for which she was otherwise qualified.

aa. Defendant maintains policies and procedures that have the purpose or effect of failing to reassign employees with disabilities, who are unable to perform the essential functions of their current position, to vacant positions as a reasonable accommodation.

    bb. Defendant maintains policies and procedures that have the purpose or effect of failing to provide reasonable accommodations to disabled employees with lifting restrictions in registered nurse and bedside nursing positions.

18. As a result of the foregoing, Carter suffered harm.

19. The effect of the practices described in Paragraph 17 has been to deprive Carter of equal employment opportunities and otherwise adversely affect the terms and conditions of her employment because of her disability, in violation of the ADA.

20. The unlawful employment practices described above were intentional.

21. The unlawful employment practices described above were done with malice or with reckless indifference to Carter's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating based on disability including, but not limited to, failing to provide reasonable accommodations to qualified individuals with disabilities that do not constitute an undue hardship.

B. Grant a permanent injunction enjoining Defendant and its officers, agents, servants, employees and applicants, attorneys, and all persons in active concert or participation with it, from failing to engage in the interactive process to accommodate the known disabilities of its employees.

  C. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

  D. Order Defendant to make Carter whole by providing appropriate backpay with amounts for lost benefits and prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

  E. Order Defendant to make Carter whole by reinstating her or awarding front pay in lieu thereof, in amounts to be determined at trial.

  F. Order Defendant to make Carter whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

  G. Order Defendant to make Carter whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, distress, suffering, inconvenience, anxiety, loss of enjoyment of life, loss of self-esteem, and embarrassment in amounts to be determined at trial.

  H. Order Defendant to pay Carter punitive damages for the malicious and reckless conduct described above, in amounts to be determined at trial.

  I. Grant such further relief as the Court deems necessary and proper in the public interest.

J.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

           GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M. Street, N.E.
Washington, D.C. 20507


KENNETH L. BIRD
Regional Attorney

NANCY D. EDMONDS
Assistant Regional Attorney

 s/ Alysia Robben
Alysia Robben, Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Louisville Area Office
600 Dr. Martin Luther King Jr. Place
Suite 268
Louisville, Kentucky 40202
(502) 694-3976 (direct)
alysia.robben@eeoc.gov


Brandon Skates, Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Indianapolis District Office

101 W. Ohio St.
Indianapolis, Indiana 46204
(463) 999-1138 (direct)
brandon.skates@eeoc.gov